UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE A. HORAN, | ) | CIV. 10-5054-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER AFFIRMING THE |
| | ) | DECISION OF COMMISSIONER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Christine A. Horan, moves for reversal of the Commissioner of Social Security's (Commissioner) decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act and her application for supplemental security income (SSI) under Title XVI of the Social Security Act. The Commissioner opposes this motion.

## PROCEDURAL HISTORY

On June 9, 2008, Horan applied for DIB and SSI. Joint Statement of Material Facts (JSMF) 1. For purposes of her DIB claim, Horan alleged an onset date of disability as November 15, 2006. JSMF 1; Administrative Record (AR) 13. For SSI purposes, Horan alleged she had been disabled since May 18, 2008. JSMF 1. Both claims were denied initially and upon reconsideration. AR 13. Horan then requested a hearing before an administrative law judge (ALJ). AR 13. A hearing was held on July 1, 2009. AR 13. During that hearing, the ALJ received testimony from a consulting medical expert, a vocational expert (VE), and Horan. AR 13. Based upon that testimony and the record before him, the

ALJ determined that Horan was not disabled and issued his opinion on July 17, 2009. On August 18, 2009, Horan requested review of the ALJ's determination by the Appeals Council. JSMF 2. The Appeals Council denied Horan's request on June 18, 2010. JSMF 2. Horan then commenced this action on July 13, 2010.

## FACTS

Horan was born February 28, 1961. AR 107. At the time of the hearing, Horan was approximately 48 years old. AR 34. Horan completed the tenth grade and later obtained a GED. AR 35. She went on to complete medical assistant training. AR 195. At the time of her alleged onset of disability, Horan held a housekeeping position. AR 191. Prior to that, Horan worked as a waitress. AR 191.

I.  **Medical History**

As stated previously, Horan alleged a disability onset date of November 15, 2006. AR 13. The records indicate that her first medical visit after this date occurred on February 27, 2007. AR 296. At that time, Horan was being treated for urge incontinence. AR 296. Horan expressed that she was "having some problems with depression" and requested a prescription for Wellbutrin. AR 296. Her medication for urge incontinence was also continued. AR 296.

On May 22, 2007, Horan was seen for an "All Women Count" physical. AR 292. She presented with complaints of knee, back, and cervical spine pain. AR 292. The physician ordered tests to determine the presence of inflammatory arthritic conditions. AR 292. Horan also reported that she had stopped the Wellbutrin as she did not feel it was necessary. AR 292. Nonetheless, a

handwritten notation stating "Depression Cymbalta" appears at the bottom of the record. AR 292.

Horan was seen for a follow-up on June 26, 2007. AR 291. According to the record, Horan had been placed on Cymbalta a week prior. AR 291. She stated that she was not sleeping well and requested medication and a prescription for an air conditioner. AR 291.

On August 27, 2007, Horan was examined by Dr. Jennifer May based upon a referral made by Horan's primary physician. AR 269. Horan presented with complaints of pain and a "history of elevated rheumatoid factor and antinuclear antibody test," which Dr. May later referred to as a "slightly abnormal immunologic panel." AR 267, 269. Dr. May noted no evidence of joint inflammation, swelling, redness, or warmth. AR 269. Dr. May stated, "I think this is mainly a manifestation of myofascial pain syndrome." AR 270. Dr. May recommended physical therapy and medication. AR 270.

The next day, on August 28, 2007, Horan was seen by her primary physician for a follow-up for her depression. AR 288. Horan told the doctor that the medication was helping. AR 288. The notes state:

> She does feel that it is helping but it is not a cure-all for all the problems going on in her life but at least she does not feel so depressed. She has a little more motivation. Does not feel so hopeless. Does not cry as often. She really does not want to go up higher on the dose at this time.

AR 288.

On September 10, 2007, Horan returned to Dr. May for a follow-up visit. AR 267. At that time, Horan expressed that the pain medication, Tramadol, was not effective. AR 267. Dr. May then prescribed Tylenol No. 3. AR 267.

On November 13, 2007, Horan was seen by her primary physician. AR 286. According to the notes, Horan stated "that the depression seems to be going fairly well, but she has been under a lot more stress lately." AR 286. Her depression medication was subsequently adjusted to a higher dose. AR 286.

On January 8, 2008, Horan reported that she did not see "a huge benefit" to the higher dose of the antidepressant, but that "her depression is improved." AR 284. As a result, her antidepressant dose was lowered. AR 284.

On April 10, 2008, Horan reported that the medication which previously controlled her urge incontinence was no longer as effective. AR 283. The medication was adjusted accordingly. AR 283. No mention was made of her depression or medication for depression.

On April 21, 2008, Horan was examined by Dr. Shana Bernhard regarding the urge incontinence. AR 336-37. Dr. Bernhard concluded that Horan "would be a good candidate for a sling, specifically a transobturator tape." AR 337. On May 29, 2008, the procedure was performed on an outpatient basis. AR 345-46. Initially, Horan had difficulty voiding. AR 336. Thereafter, she reported an increase in her urgency symptoms. AR 336. Dr. Bernhard diagnosed her with a urinary tract infection and treated her with antibiotics. AR 335. Dr. Bernhard also stated that it was "possible that [Horan] may need Botox injections or an

InterStim implant if the medications [were] not able to take care of her bladder spasms." AR 335.

## II. Therapeutic History

The record also contains notes regarding Horan's therapy sessions with Behavior Management Systems. The first documented session occurred on June 12, 2007. AR 380. A needs assessment was completed on June 14, 2007. AR 274-78. The assessment states, "Christine has previously been diagnosed with Bipolar D/O, & is having current problems with unstable mood. Borderline Personality D/O issues are also problematic for her." AR 275. Based upon this history, the assessment notes a primary diagnosis of bipolar disorder and a diagnosis of borderline personality. AR 276.

A treatment plan was drafted on August 1, 2007. AR 374-76. The treatment plan listed diagnoses of post-traumatic stress disorder (PTSD), parent-child relational problem, and "Borderline Personality Disorder Principal Diagnosis." AR 374. It further listed her Global Assessment of Functioning (GAF) as 65 out of 100, indicating mild symptomology. AR 374; *see also* JSMF 9.

Through Behavior Management Systems, Horan met with a counselor on June 19, 2007, June 26, 2007, July 31, 2007, August 7, 2007, September 11, 2007, October 2, 2007, October 23, 2007, November 13, 2007, December 11, 2007, January 22, 2008, February 26 2008, and March 1, 2008. AR 359-80; 385-99.

5

But Horan did not show up for all of her scheduled therapy sessions and missed appointments on August 14, 2007, August 28, 2007, September 18, 2007, December 11, 2007, December 18, 2007, and January 15, 2008. AR 359-80; 385-99.

On April 7, 2009, Horan sought counseling services from Lutheran Social Services. AR 400-01. The intake assessment by Lutheran Social Services indicates that Horan had been previously diagnosed with PTSD and depression. AR 400. The expected duration of treatment was five sessions. AR 400. Her GAF was reported to be 45. AR 411. She met with a counselor at Lutheran Social Services on April 21, 2009, April 29, 2009, May 20, 2009, June 2, 2009, June 9, 2009, and June 18, 2009. AR 402-08. The records indicate an additional session was scheduled on June 25, 2009, but there is no record of that session being held. AR 402.

### III.    ALJ's Decision

The ALJ issued his decision on July 17, 2009, concluding that Horan was not disabled. AR 23. In coming to this determination, the ALJ used the mandatory five-step sequential evaluation process.[1] At the first step, the ALJ

---

[1] Under this five-step process, "[t]he ALJ first determines if the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so,

determined that Horan had not engaged in substantial gainful activity since the alleged onset of disability date. AR 15. Next, the ALJ determined that Horan suffered from the severe impairment of myofascial pain syndrome. AR 16. The ALJ also considered Horan's history of chronic pulmonary disease, mild obesity, and depression, but he concluded that these impairments were not severe. AR 16-17. At the third step, the ALJ concluded that Horan did not have an impairment or combinations of impairments that met or equaled a listed impairment. AR 17. The ALJ then formulated Horan's residual functional capacity (RFC). AR 28. He determined that based upon the evidence, including Horan's testimony at the hearing, that Horan possessed the ability to "lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday." AR 18. The ALJ further found that "[t]he claimant should avoid concentrated exposure to extreme cold, noise, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants. She would need access to a restroom within a reasonable distance from the workplace." AR 18. Based upon this RFC, the ALJ found that Horan was able to perform her past relevant work as a housekeeper or waitress. AR 22. As a result, the ALJ determined Horan was not disabled.

---

the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled." *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010).

## STANDARD OF REVIEW

An ALJ's decision must be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (reasoning that substantial evidence means "more than a mere scintilla." (citations omitted)). In determining whether substantial evidence supports the ALJ's decision, the court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010) (internal citation omitted). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

In determining whether the Commissioner's decision is supported by substantial evidence, the court reviews the entire administrative record and considers six factors: (1) the ALJ's credibility determinations; (2) the claimant's vocational factors; (3) medical evidence from treating and consulting physicians; (4) the claimant's subjective complaints relating to activities and impairments; (5) any third-party corroboration of claimant's impairments; and (6) a vocational

expert's testimony based on proper hypothetical questions setting forth the claimant's impairment(s). *Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commission's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

## DISCUSSION

Horan alleges that the ALJ committed three reversible errors. First, Horan asserts that the ALJ erred in failing to consider the longitudinal evidence of her mental impairment. Horan further contends that the ALJ erred when he did not order a consultative exam despite evidence of her mental impairments. Finally, Horan asserts that the ALJ's determination that she is not disabled is not supported by substantial evidence.

### I. Longitudinal Evidence

In response to the ALJ's determination that Horan is not disabled, Horan submitted to the Appeals Council a number of records regarding her mental impairment. These documents consist mainly of treatment notes concerning therapy sessions that occurred after July 17, 2009, the date of the ALJ's

decision. AR 418-47. Included in these documents is a psychiatric evaluation completed on October 6, 2009, which refers to three separate hospitalizations in 1998, 1999, and 2001 for suicidal ideation. AR 418. Horan asserts that failure to consider these documents is reversible error.

Title 20 of the Code of Federal Regulations, section 404.976(b), provides that the Appeals Council will consider "any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision." Here, the evidence submitted to the Appeals Council consists of a needs assessment performed on August 19, 2009, a psychiatric evaluation completed on October 6, 2009, and treatment notes for the period between September 29, 2009, and November 10, 2009. AR 416-47. As these materials are dated after the ALJ's decision dated July 17, 2009, and discuss Horan's mental status after the date of the ALJ's decision, they were not properly before the Appeals Council.

Additionally, the court finds that the reference to events that occurred in 1998, 1999, and 2001 are not relevant to the determination of whether Horan was suffering from depression to the extent that it was a severe impairment in late 2006. The ALJ need only consider evidence over a "sufficiently long period prior to the date of adjudication to establish [an] impairment severity." 20 C.F.R, Pt. 404, App'x 1, 12.00D(2). An event occurring approximately five years prior to the alleged period of disability is too far removed to be considered relevant. As a

result, the court finds that the ALJ did not err in failing to consider these documents.

## II. Consultative Examination

Horan also contends that the ALJ committed reversible error by failing to order a consultative examination. Horan asserts that upon notice of the evidence in the record that she was diagnosed with borderline personality disorder and PTSD by individuals who were not considered to be acceptable medical sources, the ALJ should have ordered an examination by an individual who would be considered an acceptable medical source to substantiate the diagnoses.

Under the regulations, an ALJ may order a consultative examination "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 404.1519a(2). Horan did not allege either PTSD or borderline personality disorder as a basis for her claim for benefits. AR 107-13. While the ALJ has a duty to develop the record in order to make a proper decision, "this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Here, the record consists of numerous treatment notes regarding Horan's counseling sessions. AR 359-99. The record also contains the observations of Horan's physicians regarding her mental status. AR 284, 286, 288, 291-92, 295-96.

Furthermore, the file was reviewed by two medical experts. First, the file was reviewed by a non-examining medical expert, Dr. Doug Soule. AR 252-64.

11

Dr. Soule completed a psychiatric review technique form in which he opined that Horan suffered from depression but that the "[c]ondition appears to be controlled with medication." AR 264. He went on further to state that the "[c]ondition is considered not severe." AR 264.

The ALJ additionally called a non-examining clinical psychologist, Dr. Michael Enright, to review the file and testify at the evidentiary hearing. AR 31-33. Dr. Enright testified that he reviewed Horan's file. AR 31. He testified that the record shows Horan suffers from depression, but he did not believe she was significantly limited by this impairment. AR 32. When questioned regarding the diagnosis of PTSD, Dr. Enright responded that the only mention of the diagnosis was from a counselor with a master's degree who would not be considered an acceptable source. AR 32-33. There is no indication whether Dr. Enright believed the record supported the diagnosis of PTSD or borderline personality disorder. He did, however, testify that there was sufficient objective medical evidence to allow him to form an opinion regarding Horan's mental state. AR 31. Based upon this testimony, coupled with the review of Dr. Soule, the court finds that it was not error for the ALJ to exercise his discretion and refrain from ordering additional examinations of Horan.

### III.  Substantial Evidence

Horan also alleges the ALJ's determination of not disabled is not supported by substantial evidence. Specifically, Horan asserts that the ALJ's credibility determination was in error. She also asserts the ALJ's formulation of her RFC,

and the resulting hypothetical presented to the VE failed to present an accurate depiction of her limitations, which resulted in an improper determination. The court will examine each issue separately.

### A. Credibility

When determining the credibility of a claimant's subjective complaints, the ALJ is required to consider certain factors. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984). These factors include "the claimant's daily activities; the location, duration, frequency, and intensity of her symptoms; factors that precipitate and aggravate the symptoms; medication and other treatment for relief of symptoms; information and observations by treating and examining physicians and third parties regarding the nature and extent of her symptoms[.]" *Polaski*, 739 F.2d at 1321-22. But "[an] ALJ [is] not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater,* 87 F.3d 963, 966 (8th Cir. 1996)). Additionally, "[w]here adequately explained and supported, credibility findings are for the ALJ to make." *Id.* at 972 (citing *Tang v. Apfel*, 205 F.3d 1084, 1087 (8th Cir. 2000)).

In his opinion, the ALJ acknowledged the proper factors to be considered when determining the credibility of subjective complaints. AR 18-19. The ALJ then noted Horan's activities of daily living were inconsistent with her complaints of

13

pain. AR 19. He further noted that her statements regarding the intensity of her pain and its effects were not consistent with the medical evidence in the record. AR 19-20. The ALJ specifically noted Horan had never reported severe functional limitations or a need to sleep during the daytime to her treating physicians. AR 20. Furthermore, the ALJ noted a lack of prescribed pain medication as an additional inconsistency between Horan's complaints and the record. AR 20. Finally, the ALJ referred to the lack of significant findings in the physicians' examinations. AR 20.

A review of the medical records shows Horan had a number of visits with physicians during which she did not present complaints of pain. AR 282, 290, 291, 294-96, and 300. Additionally, the notes of these visits do not indicate that Horan was taking, or was prescribed, medication for pain. *See id.* On August 27, 2007, Horan was examined by Dr. May for "evaluation of positive RA and FANA levels." AR 267, 289. Dr. May, upon examination, found "no evidence of joint inflammation." AR 269. Additionally, Dr. May did not note any redness, warmth, or swelling. AR 268. Dr. May did, however, opine that Horan was suffering from myofascial pain syndrome. AR 270, 289. Dr. May prescribed what she termed "conservative measures." AR 270. The court finds that the overall lack of significant findings by Horan's physicians, the lack of documented complaints of pain, and the conservative treatment prescribed when complaints of pain were presented lend support to the ALJ's credibility determination.

Additionally, the court finds that Horan's activities of daily living further support the ALJ's credibility determination. Horan testified that on an average

day, she goes for a walk and does household chores, including dishes, mopping, dusting, vacuuming, and laundry. AR 40-43. She also cares for her cat, watches television, and sleeps. AR 40-41. She further testified that she is able to complete her own personal care without assistance. AR 43. Horan also testified she tends to a small garden during the summer. AR 44. As a result, the court finds the ALJ's credibility determination is supported by substantial evidence in the record.

### B. Residual Functional Capacity and the Hypothetical

Horan also contends that the RFC formulated by the ALJ and then presented in the hypothetical to the VE failed to accurately depict her limitations and abilities and, therefore, resulted in an improper determination.

The ALJ found that Horan had the ability to "lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday." AR 18. The ALJ additionally found that Horan "should avoid concentrated exposure to extreme cold, noise, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants" and "would need access to a restroom[.]" AR 18. Horan does not object to these findings but asserts the ALJ erred in failing to include limitations resulting from her mental impairments.

The opinion of the ALJ indicates Horan's mental impairment of depression was considered and determined not to "have more than a minimal effect on her

ability to perform basic work-related activities." AR 16-17. The court finds this determination is supported by substantial evidence.

The record shows Horan received counseling for depression beginning on February 1, 2007, and continuing through March 1, 2008, from Behavior Management Systems. AR 359-99. During that time frame, Horan missed several appointments. AR 362-64, 369, 371, 372, and 392. Additionally, Horan went without counseling for almost a year until April of 2009 when she sought counseling services from Lutheran Social Services. AR 400-01.

The record also reflects that during the alleged period of disability, there were a number of visits with physicians during which neither Horan nor the treating physician noted any symptoms or treatment related to her mental conditions. AR 282, 283, 289, 290, 297-300. On several occasions when depression was discussed, the treating physician noted that Horan's depression was "stable" or "improved." AR 284, 288. On another occasion, the physician noted that Horan independently stopped her medication for depression because she felt she no longer needed it. AR 292. Thus, the record supports the conclusion that Horan's depression did not constitute a severe impairment.

Additionally, the testimony of Dr. Enright and the review of Dr. Soule provides support to the ALJ's determination that Horan's mental impairment did not rise to a severe level. As previously discussed, Dr. Enright testified that Horan was not significantly limited by her depression. AR 32. Likewise, Dr. Soule found that Horan's depression was controlled with medication and did not

constitute a severe impairment. AR 264. The Eighth Circuit has held that "'[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)). As a result, the court finds that the ALJ's conclusion that Horan's depression was not a severe impairment is supported by substantial evidence.

The Eighth Circuit has held that "'[a] hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.'" *Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005) (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)). "Likewise, the ALJ may exclude any alleged impairments that [he] has properly rejected as untrue or unsubstantiated." *Hunt,* 250 F.3d at 625 (citing *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997)). Having found that the ALJ properly rejected depression as a severe impairment, the court further finds that it was not error to omit such limitations from the RFC. As a result, the court finds that the ALJ did not err in formulating the hypothetical presented to the VE.

## CONCLUSION

Having reviewed the record, the court finds that substantial evidence supports the ALJ's findings regarding the severity of Horan's impairments, her credibility, and her RFC. Moreover, the court finds that the ALJ did not err by failing to order a consultative exam. The court further concludes that substantial

evidence supports the ALJ's determination that Horan was not disabled between November 15, 2006, and the date of the decision, July 17, 2009. Accordingly, it is

ORDERED that the motion to reverse the decision of the Commissioner is denied, and the decision of the Commissioner is affirmed.

Dated March 6, 2012.

> BY THE COURT:
>
> /s/ *Karen E. Schreier*
> KAREN E. SCHREIER
> CHIEF JUDGE